EDOK Criminal Complaint (Revised 6/13)

# United States District Court

## EASTERN DISTRICT OF OKLAHOMA

**UNITED STATES OF AMERICA,**

***Plaintiff,***

**v.**

**MARTIN ARANDA ZAVALA,**

***Defendant.***

**CRIMINAL COMPLAINT**

**Case No.** 26-MJ-119-JAR

I, William R. Steele, the undersigned complainant, state that the following is true to the best of my knowledge and belief.

On or about May 6, 2026, in the Eastern District of Oklahoma, Martin Aranda Zavala committed the crime of Possession of a Firearm and Ammunition by a Prohibited Person, in violation of Title 18, United States Code, Sections 922(g)(5) and 924(a)(8).

I further state that I am a Special Agent with Homeland Security Investigations, and that this complaint is based on the following facts:

(See Affidavit of William R. Steele, which is attached hereto and made a part hereof by reference.)

☒ Continued on the attached sheet.

WILLIAM R. STEELE
Special Agent
Homeland Security Investigations

Sworn to on May 13th, 2026.

JASON A. ROBERTSON
UNITED STATES MAGISTRATE JUDGE
Name and Title of Judicial Officer

Signature of Judicial Officer

UNITED STATES DISTRICT COURT ★ EASTERN DISTRICT OF OKLAHOMA ★

**Affidavit in Support of Criminal Complaint**

I, Special Agent William R. Steele, being duly sworn under oath, do hereby depose and state:

## INTRODUCTION AND AGENT BACKGROUND

1. I am a Special Agent employed by the Department of Homeland Security, Immigration and Customs Enforcement ("ICE"), Homeland Security Investigations ("HSI"). I was rehired by HSI as a full time, sworn federal agent in October 2025. Prior to this appointment, I was a full-time, sworn federal agent with HSI from 2003 until retirement in 2025. As a result of my employment, my duties include, but are not limited to, the investigation and enforcement of Titles 8, 18, 19, 21, and 31 of the United States Code. I am an "investigative or law enforcement officer of the United States" within the meaning defines in 18 U.S.C. § 2510(7), in that I am an agent of the United States authorized by law to investigate violations of federal laws and make arrests for violations of those laws. As part of my duties as a Special Agent, I investigate immigration-related criminal violations relating to violations of 8 U.S.C. § 1326, illegal reentry of removed aliens.

2. After a subject is in ICE custody, investigators or deportation officers identify that the subject was not born in the United States, then the subject's fingerprints and biographical information are submitted to the Integrated Automated Fingerprint Information System ("IAFIS") and the Automated Biometric Identification System ("IDENT"). If the subject has ever been encountered by an immigration officer, this search of the immigration databases will show if the subject has an "A" File with a corresponding A-File number.

3. An "A-File" or Alien-File is a file kept and maintained by United States Citizenship and Immigration Services (CIS) and is the official file for all immigration and naturalization records for a particular alien. The A-File is identified by an A-File number. The A-File and A-File number are

linked to the alien's fingerprints, which are unique to every individual. No two aliens have the same A-File or A-File number.

4. It is common practice for law enforcement to first obtain fingerprint results to verify an alien's identity, because in my knowledge, training, and experience, it is common for aliens to attempt to mislead law enforcement officers, state and local officials, and members of the United States Government as to their identity. This is often done through the use of false names, dates of birth, and other biographical information. Aliens do this to avoid deportation or to gain immigration-based benefits, especially when they have an active removal order. Therefore, ICE Enforcement and Removal Operations (ERO) relies solely on the individual's A-number, confirmed via fingerprint, to identify aliens who are subject to removal.

5. From my training and experience, I am also familiar with FBI, ICE, and Citizenship and Immigration Services (CIS) databases that contains records showing whether the subject has ever filed any application for permission to enter the United States legally or has any pending applications that would grant any immigration benefits, visas, or lawful status in the United States.

6. The facts and statements in this affidavit are based in part on information provided by other law enforcement officers and on my personal observations and training and experience as a Special Agent with HSI. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

7. It is my belief that **MARTIN ARANDA ZAVALA (ZAVALA)**, DOB 05/02/1997, has violated 18 U.S.C. §§ 922(g)(5) and 924(a)(8) [Possession of a Firearm and Ammunition by a Prohibited Person], in that on or about May 6, 2026, Okmulgee Sheriff's Deputies arrested **ZAVALA** in possession of a firearm and booked him into Okmulgee County Jail. At the Okmulgee County Jail, **ZAVALA** admitted he was present in the United States illegally and investigators

confirmed through law enforcement databases that **ZAVALA** has never filed any application for permission to enter the United States legally and has no pending applications that would grant any benefits, visas, or legal status in the United States.

## PROBABLE CAUSE

8. On May 6, 2026, at approximately 1717 hours, Okmulgee Sheriff's Deputy Payden From was dispatched to 814 South Kern Lot #2, Okmulgee, OK, which is within the Eastern District of Oklahoma, for a report of an unwanted person. When Deputy From arrived, he observed a male subject, later identified as **ZAVALA**, getting into a vehicle and another male subject, C.N., pointing at **ZAVALA** and saying that **ZAVALA** had a gun. Also at the residence was B.L., who used to be in a romantic relationship with **ZAVALA** but was now in a romantic relationship with C.N.

9. Deputy From got out of his marked patrol unit and asked **ZAVALA** to exit the vehicle. When Deputy From approached **ZAVALA,** he asked if **ZAVALA** had a gun. **ZAVALA** advised no and that it was inside his vehicle. **ZAVALA** explained that he wanted to collect his belongings along with his vehicle. **ZAVALA** explained he was unaware that C.N. and B.L. were in a relationship and told them, "let me get my shit and let me get my gun and I'm leavin". **ZAVALA** said that C.N. began threatening him and telling him he could not be at the address. **ZAVALA** advised that he has been paying the mortgage on the residence, but when he was told to leave he did.

10. Following this, Deputy From spoke with C.N. C.N. explained that he was in a relationship with B.L. and that after getting off work he took B.L.'s car, which is registered to **ZAVALA**, to get fuel. When he returned, he observed **ZAVALA** walking to the house. C.N. explained that they (C.N. and **ZAVALA**) introduced themselves and C.N. explained to **ZAVALA** that he was in a

relationship with B.L. **ZAVALA** then advised that he wanted to get his clothes and gun. C.N. said that B.L. told **ZAVALA** that she would get his belongings, but **ZAVALA** went inside the residence and grabbed a case off the top of the fridge, opened it, collected what C.N. described as a black and brown pistol, ejected the magazine and inspected it, reinserted the magazine and pulled the slide back, loading a round inside the chamber. C.N. then asked **ZAVALA** what he was doing and if he was going to start shooting people, and pointed out that **ZAVALA**'s child was inside the residence as well. C.N. told Deputy From that **ZAVALA** said to him, "I will shoot you right now". C.N. stated that he believed **ZAVALA** was not in the United States legally.

11. Following the interviews, **ZAVALA** gave Deputy From verbal consent to search his vehicle and collect the firearm. Deputy From located a Citadel (Armscor of the Phillipines), M1911-A1 CS, .45ACP caliber, semi-automatic pistol, serial number CIT032596. Deputy From noted that the firearm had a magazine inserted, hammer to the rear, and a live round in the chamber.

12. Deputy From checked **ZAVALA**'s immigration status with ICE Enforcement Agent Brown. Agent Brown advised that **ZAVALA** was arrestable and had no lawful immigration status in the United States. Deputy From placed **ZAVALA** in custody and transported him to the David L. Moss Detention Facility in Tulsa, where he was booked in on an ICE hold.

13. On May 6, 2026, **ZAVALA** was transported to the ICE ERO office in Tulsa, Oklahoma. During processing, an ERO Deportation Officer identified **ZAVALA** as a Mexican national. **ZAVALA** declined to provide information about when and where he entered the United States. Further checks conducted through FBI, ICE, and CIS databases verified that **ZAVALA** has never filed an application for permission to legally enter the United States and has no pending applications that would grant him benefits, visas, or legal status within the United States.

14. During this investigation, Alcohol, Tobacco, Firearms, and Explosives (ATF) Special Agent Lucas Keck inspected the Citadel (Armscor of the Phillipines), Model M1911-A1 CS, .45ACP caliber, semi-automatic pistol, serial number CIT032596 and 15 rounds of ammunition that were seized with the firearm. Based on Special Agent Keck's training and experience, he determined that the firearm was a "firearm" as defined in 18 U.S.C. § 921(a)(3), the ammunition was "ammunition" as defined in 18 U.S.C. § 921(a)(17)(A), and the firearm and ammunition were not manufactured in the State of Oklahoma and therefore had moved in interstate and/or foreign commerce.

## CONCLUSION

15. Based on the information set forth in this affidavit, I submit there is probable cause to arrest **MARTIN ARANDA ZAVALA** for a violation of 18 U.S.C. §§ 922(g)(5) and 924(a)(8) [Possession of a Firearm and Ammunition by a Prohibited Person].

Respectfully submitted,

William Steele
Special Agent
Homeland Security Investigations

Sworn to on the 13th day of May, 2026.

UNITED STATES MAGISTRATE JUDGE